UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

PLANNED PARENTHOOD OF
GREATER WASHINGTON AND
NORTH IDAHO; PLANNED
PARENTHOOD OF THE GREAT
NORTHWEST AND THE
HAWAIIAN ISLANDS; and
PLANNED PARENTHOOD OF THE
HEARTLAND,

                      Plaintiffs,

    v.

U.S. DEPARTMENT OF HEALTH
AND HUMAN SERVICES and
ALEX MICHAEL AZAR II in his
official capacity as Secretary of the
U.S. Department of Health and Human
Services,

                      Defendants.

NO. 2:18-CV-0055-TOR

ORDER GRANTING PERMANENT
INJUNCTION; GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS; DENYING MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are Plaintiffs' Motion for Preliminary Injunctive

Relief (ECF No. 24) and Defendants' Opposition to Plaintiffs' Motion for a

Preliminary Injunction and Cross-Motion to Dismiss or for Summary Judgment

ORDER GRANTING PERMANENT INJUNCTION ~ 1

1   (ECF No. 27).  This matter was heard with oral argument on April 24, 2018.  The

2   Court has reviewed the record and files herein, considered the parties' arguments,

3   and is fully informed.  For the reasons discussed below, Plaintiffs' Motion for

4   Preliminary Injunctive Relief (ECF No. 24) is **GRANTED**; Defendants' Motion to

5   Dismiss (ECF No. 27) is **GRANTED in part** and **DENIED in part**; and

6   Defendants' Motion for Summary Judgment (ECF No. 27) is **DENIED**.

7                                              **BACKGROUND**

8          On February 15, 2018, Plaintiffs Planned Parenthood of Greater Washington

9   and North Idaho, Planned Parenthood of the Great Northwest and Hawaiian

10  Islands, and Planned Parenthood of the Heartland (collectively "Planned

11  Parenthood") filed this Complaint against Defendants United States Department of

12  Health and Human Services ("HHS") and the Secretary of HHS, Alex Michael

13  Azar II.  ECF No. 1.  Plaintiffs seek to prevent and declare unlawful HHS's

14  decision to terminate Plaintiffs' grant agreements and end the Teen Pregnancy

15  Prevent Program ("TPP Program").  *Id.* at ¶ 1.  Plaintiffs assert claims for

16  declaratory and injunctive relief under the Administrative Procedure Act ("APA"),

17  Establishment Clause, and Due Process Clause.  *Id.* at ¶¶ 100-31.

18         In the instant motion, Plaintiffs move for preliminary injunctive relief

19  enjoining Defendants from terminating without cause Plaintiffs' five-year

20  cooperative agreements under the TPP Program.  ECF No. 24 at 8.  Defendants

oppose Plaintiffs' motion for a preliminary injunction and request the Court

dismiss or enter summary judgment on all of Plaintiffs' claims.  ECF No. 27.

## FACTS

Unless otherwise indicated, the following facts are primarily drawn from

Plaintiffs' Complaint and documents appended to the instant motion, and are

accepted as true for the purposes of the motions for preliminary injunction and to

dismiss.  The TPP was created by Congress for the 2010 fiscal year ("FY").  ECF

No. 1 at ¶ 2.  Congress has continued to appropriate funds for the TPP Program

since 2010 at approximately $110 million annually.  *Id.* at ¶¶ 26-27, 31.  The

appropriations language explains that funds "shall be for making competitive

contracts and grants to public and private entities to fund medically accurate and

age appropriate programs that reduce teen pregnancy …."  *Id.* at ¶ 26; 27-2 at 353;

Pub.L. 115-141, 132 Stat. 348, 733 (Consolidated Appropriations Act, 2018).

HHS's Office of Adolescent Health (OAH) is responsible for implementing

and administering the TPP Program.  ECF No. 1 at ¶ 30.  In April 2015, HHS

issued Funding Opportunity Announcements (FOAs) for the TPP Program.  *Id.* at ¶

34.  The FOAs required a detailed work plan over the "five-year project period."

*Id.* at ¶ 42; 27-2 at 11 (Ex. A).  The FOAs state, "Each year of the approved project

period, grantees are required to submit a noncompeting application which includes

a progress report for the current budget year, and work plan, budget and budget

justification for the upcoming year." ECF No. 27-2 at 78.

In July 2015, HHS awarded 81 new TPP Program grants. ECF No. 1. at ¶ 40. In the three TPP Programs at issue, the Notice of Award ("NOA") forms issued in 2015 and again in 2016 listed the project period as July 1, 2015 through June 30, 2020. ECF Nos. 1 at ¶ 41; 24-3 (Ex. A-B); 24-5 (Exs. A-C); 24-6 (Exs. E-F). The budget period in these awards were only for the relevant year. ECF Nos. 24-3 (Ex. A-B); 24-5 (Exs. A-C); 24-6 (Exs. E-F). Plaintiffs assert that over the first three years of the latest round of the TPP Program funding, HHS consistently commended all three Plaintiffs for their implementation of their respective TPP Program projects. ECF No. 1 at ¶ 55.

In July 2017, HHS awarded FY 2017 funds to Plaintiffs. *Id.* at ¶ 76. The NOAs for 2017 state, "This award also shortens the project period to end on June 30, 2018 at the end of this budget year." ECF Nos. 1 at ¶ 77; 24-3 at 54 (Ex. D); 24-5 at 43 (Ex. C); 24-6 at 565 (Ex. K). On August 1, 2017, Plaintiffs each separately wrote to HHS challenging the alleged termination and Defendants did not respond. ECF No. 1 at ¶¶ 79-80.

## DISCUSSION

### I.   Injunction

Pursuant to Federal Rule of Civil Procedure 65, the Court may grant preliminary injunctive relief in order to prevent "immediate and irreparable

injury." Fed. R. Civ. P. 65(b)(1)(A). Rule 65 also states that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2).

At oral argument, the Court questioned the parties as to whether there was any reason not to make this action a final injunction. Defendants asserted that Plaintiffs had not sought a permanent injunction. On reply, Plaintiffs clarified that their priority is a preliminary injunction, but see no reason why the resolution should not be final if the Court is ready to resolve the case. The Court finds that there is no reason not to decide the issue as a final injunction as it appears that the Defendants do not have any additional evidence concerning the decision with respect to Plaintiffs' APA claims. Accordingly, the Court considers Plaintiffs' request for a preliminary injunction as a final injunction.

To be entitled to a permanent or final injunction, a plaintiff must demonstrate: "(1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction." *Indep. Training & Apprenticeship Program v. California Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013). "The standard for a preliminary injunction is essentially the

same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."  *Id.* (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)). Accordingly, the Court's analysis remains largely the same as if it were considering the Plaintiffs' original motion for preliminary injunction.

A plaintiff must satisfy each element for injunctive relief.  Yet, the Ninth Circuit uses a "sliding scale" under which the injunction may be issued if there are serious questions going to the merits and the balance of hardships tips sharply in the plaintiff's favor, along with two other *Winter* factors.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[A] stronger showing of one element may offset a weaker showing of another."); *see also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) ("We have also articulated an alternate formulation of the *Winter* test, under which serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." (internal quotation marks and citation omitted)).

//

//

//

### A. Actual Success on the Merits

#### 1. APA Claims

Plaintiffs insist that HHS's actions must be set aside under the APA as HHS's conduct is arbitrary and capricious, and contrary to law.  ECF Nos. 1 at ¶¶ 100-13; 24 at 17.

#### a. Grant Policy Statement Applicability

As an initial matter, Plaintiffs argue that the GPS is not a binding regulation, but merely informal internal guidance.  ECF No. 29 at 20.  The GPS states:

> Recipients are not directly subject to the requirements of HHS Grants Policy Directives and implementing HHS Grants Administration Manuals …, which are internal documents guiding HHS operations. If an OPDIV [HHS Operating Divisions] implements a requirement in an internal document that does affect recipients, it will not do so by citing that document; rather, the requirement is placed on the recipient through explicit coverage in the NoA.

ECF No. 27-2 at 111 (Ex. B).  The GPS explains general terms and conditions that are common across all OPDIVs and apply "unless there are statutory, regulatory, or award-specific requirements to the contrary (as specified in individual Notices of Award)."  *Id.* at 110.  The controlling NOAs specify that the order of precedence for conflicting or inconsistent policies applicable to the grants are:  (1) grant program legislation; (2) grant program regulations; (3) award notice including terms and conditions; and (4) federal administrative requirements, costs

1    principles and audit requirements applicable in this grant.  ECF No. 24-5 at 14

2    (item 16).

3        Defendants respond that the GPS simply explains what is evident as a

4    consequence of HHS's regulations and the ADA, but is not arguing that the GPS

5    should be followed at the expense of HHS's regulations.  ECF No. 30 at 16.

6    Defendants emphasize that HHS's "Federal award must include wording to

7    incorporate, by reference, the applicable set of general terms and conditions."  ECF

8    *Id.* (quoting 45 C.F.R. § 75.210(b)(2)).  Defendants argue that they did not merely

9    cite the document, but "placed [it] on the recipient through explicit coverage in the

10   NoA" terms and conditions.  *Id.*  The NOAs state, "You must comply with all

11   terms and conditions outlined in the grant award, including grant policy terms and

12   conditions contained in applicable Department of Health and Human Services

13   (HHS) Grant Policy Statements (GPS) …."  ECF No. 24-3 at 13.  Defendants

14   assert that Plaintiffs' interpretation is clear error because it would require 217

15   pages of the GPS to be appended to the NOA every year in order for HHS to rely

16   upon its general terms and conditions for grants.  ECF No. 30 at 16.

17       The Court finds that while the NOAs are controlling, the GPS aids in

18   illuminating the general terms and conditions for the TPP Program.  The NOAs

19   incorporate the GPS by reference as required under 45 C.F.R. § 75.210(b)(2).  *See*

20   ECF No. 24-3 at 13.  Yet, the GPS also makes clear that "statutory, regulatory, or

award-specific requirements" are controlling when they contradict the GPS.  ECF No. 27-2 at 110.  The NOAs also explain that legislation and regulations control over conflicting terms and conditions.  ECF No. 24-5 at 14.  Accordingly, the Court will consider the GPS, but regulatory or statutory language controls over any conflicting GPS language.

### b. Anti-Deficiency Act

Defendants contend that Plaintiffs' request for relief would violate the Anti-Deficiency Act (ADA).[1]  ECF No. 27 at 21.  The ADA is a codification of Congress' power over federal spending.  U.S. Const. art. 1, § 8, cl. 1; 31 U.S.C. § 1341.  "An officer or employee of the United States Government or of the District of Columbia government may not … involve either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law."  31 U.S.C. § 1341(a)(1)(B).

The parties agree *Leiter v. United* States, 271 U.S. 204 (1926) is the controlling case on the ADA.  ECF Nos. 27 at 22; 29 at 25; 30 at 11.  In *Leiter*, a government agency entered into several leases for office space with terms of four

---

[1]	The Court notes that the Defendants incorrectly state that Plaintiffs argue that HHS has violated the ADA, but neither Plaintiffs' Complaint nor Motion for Preliminary Injunction reference the ADA.  ECF Nos. 27 at 21; 29 at 25.

ORDER GRANTING PERMANENT INJUNCTION ~ 9

1    and five years.  *Leiter*, 271 U.S. at 205.  Annual funds covered the first year and

2    the lease terms for the next years were specifically made contingent upon

3    appropriations for those years.  *Id.*  The Supreme Court found an ADA violation

4    and held, "A lease to the Government for a term of years when entered into under

5    an appropriation available for but one fiscal year, is binding on the Government

6    only for that year."  *Id.* at 207.  "Under *Leiter* and its progeny, the contract 'dies' at

7    the end of the fiscal year, and may be revived only by affirmative action by the

8    government.  This 'new' contract is then chargeable to appropriations for the

9    subsequent year."  U.S. Gen. Accountability Office, 6 GAO-RB pt. C, s. 2,

10   Obligation/Expenditure in Excess or Advance of Appropriations (2015).

11          Defendants argue that Plaintiffs' view of their TPP Program awards is

12   inconsistent with the ADA.  ECF No. 27 at 23.  Defendants insist that while

13   Plaintiffs assert that HHS obliged itself in 2015 to award unappropriated funds

14   through 2020, no multi-year obligating authority exists for grants between HHS

15   and TPP Program grantees.  *Id.*  Defendants emphasize that HHS could not

16   lawfully commit the government to a "future payment of money in advance of, or

17   in excess of, an existing appropriation."  *Id.* at 24; *Hercules, Inc. v. United States*,

18   516 U.S. 417, 427 (1996).

19          The Funding Opportunity Announcement and Application Instructions

20   ("Funding Announcement") state that future funding would be "contingent upon

the availability of funds, satisfactory progress of the project, and adequate stewardship of Federal funds."  ECF Nos. 27 at 24, 27-2 at 39 (Ex. A).  Yet, Defendants insist that this language must be read in context with other grant documents that explain the grantee's lack of legal rights to future continuation awards, and they must be read in light of the ADA.  ECF No. 27 at 24.  Defendants argue that even if the Plaintiffs are correct in the meaning of this document, the HHS is not authorized to agree to the future award scheme Plaintiffs describe and any agreements that do not comport with *Leiter* and the ADA are void *ab initio*. *Id.*  Additionally, Defendants contend that the TPP Program appropriation specifically appropriates funds "for making competitive contracts and grants."  *Id.* Defendants then argue that Plaintiffs cannot use that statute to prohibit HHS from competing FY 2018 funds.  Defendants conclude that HHS was legally obliged to reserve the option not to give continuation funds, and exercised that option by choosing to recompete funds appropriated to the TPP Program by Congress.  *Id.* at 25.

Plaintiffs respond that agencies routinely make plans, including entering into contracts, beyond the expiration date of their available appropriations.  ECF No. 29 at 26.  Plaintiffs argue that the GAO has consistently recognized that an agency may enter into a multi-year agreements where, at the time of award, the United

States incurs no financial obligation beyond current appropriation. *Id.* A

Comptroller General decision stated:

> [A] conditional contract which specifically provides that the
> government's liability is contingent upon future availability of
> appropriations may be entered into prior to the enactment of an
> appropriation act … such contract would become operative only if and
> when the appropriation is made and should be given no legal liability
> on the part of the government for any payment shall arise until the
> appropriation has been made.

ECF No. 29 at 26; *To the Secretary of the Interior*, B-140850 (Comp. Gen. Oct. 29,

1959).  Plaintiffs then emphasize that the five-year programmatic approval here

does not obligate the government to pay money beyond the first year of

performance.  ECF No. 29 at 26-27.  Plaintiffs insist that the HHS did not violate

the ADA by agreeing to work with Plaintiffs for five-year project periods, but it

did commit itself to acting in a manner that is not arbitrary, capricious, or

otherwise contrary to law.  *Id.* at 27.

Defendants argue that the Comptroller General decision was an unusual case

where Congress passed a statute that conditioned the release of funding on the

Secretary of the Interior submitting the principal construction contract to Congress

"for a period of 45 calendar days prior to its execution."  ECF No. 30 at 12; *To the

Secretary of the Interior*, B-140850 (Comp. Gen. Oct. 29, 1959).  Defendants

emphasize that the statute entailed "the soliciting of bids and awarding of a

proposed contract to be conditioned upon the approval or disproval" of Congress

1  "and also contingent upon the future authorization by the Congress of sufficient

2  funds …." ECF No. 30 at 12; *To the Secretary of the Interior*, B-140850 (Comp.

3  Gen. Oct. 29, 1959).  Defendants then argue that under these specific

4  circumstances, the making of a contract contingent on the condition of a specific

5  appropriation for that agreement was acceptable.  Defendants assert that there is no

6  similar statutory authority here.  ECF No. 30 at 12.

7        The Court agrees with Defendants that the Comptroller General decision is

8  distinguishable and is not entirely applicable to the case at hand.  Yet, the Court

9  finds no violation of the ADA.  Defendants are correct that HHS cannot commit

10  the government to future payments of money in advance of an existing

11  appropriation under the ADA and *Leiter*.  Yet, the Court disagrees that the

12  cooperative agreements here obligate the government to pay money until the

13  appropriation has been made.  The GPS explains that "projects are

14  programmatically approved for support in their entirety, but are funded in annual

15  increments called budget periods." ECF No. 27-2 at 156.  These budget periods

16  then ensure that HHS is compliant with the ADA.  Merely because HHS approved

17  the project in its entirety, does not mean it committed itself to appropriate money

18  for future years beyond the first year.  The Funding Announcement also states that

19  the award is "contingent upon the availability of funds," which ensures compliance

20  with the ADA.  *Id.* at 39.

The Court finds that Plaintiffs' argument does not contravene the ADA, but merely alleges that HHS committed itself to not acting arbitrary, capricious, or otherwise contrary to law throughout the five-year project period, not that HHS was required to appropriate money for each future year.  *See* ECF No. 29 at 27.  Accordingly, the Court finds that Plaintiffs' interpretation would not violate the ADA.

### c.  Termination

The parties dispute whether Defendants' conduct amounts to a termination and the Court addresses this issue before considering the merits of Plaintiffs' APA claims.  *See* ECF Nos. 24 at 18-19; 27 at 27-28; 29 at 14-20.  This question revolves around whether "period of performance" under the termination definition means the "budget period" or the "project period."

A termination is defined as "any ending of a Federal award, in whole or in part, at any time prior to the planned end of a *period of performance*."  45 C.F.R. § 75.2 (emphasis added).  HHS may terminate an award:  (1) if the awardee "fails to comply with terms and conditions of the award"; (2) "for cause"; or (3) "with the consent of" the awardee.  ECF Nos. 24 at 18; 29 at 14; 45 C.F.R. § 75.372(a).  When termination is for failure to comply with the terms and conditions of the award, HHS must provide grantees "an opportunity to object and provide

information and documentation challenging the suspension or termination action."

ECF No. 24 at 18; 45 C.F.R. § 75.374.

A "period of performance" is defined as "the time during which the non-Federal entity may incur new obligations to carry out the work authorized under the Federal award.  The Federal awarding agency or pass-through entity must include start or end dates of the period of performance in the Federal award."  45 C.F.R. § 75.2.  The definition of "Project period" is referenced to the definition of "Period of performance."  *Id.*  The GPS clarifies that "the amount of Federal funds authorized for obligation and any future-year commitments, is issued for each budget period in the approved project period."  ECF Nos. 27 at 27; 27-2 at 155.  The GPS further explains that projected levels of future support "are not guarantees that the project or program will be funded … and they create no legal obligation to provide funding beyond the ending date of the current budget period as shown in the NoA."  ECF No. 27-2 at 156.

Plaintiffs assert that they received a cooperative agreement providing a "period of performance" from July 1, 2015 through June 30, 2020.  ECF No. 24 at 18.  HHS then altered the period of performance to terminate on June 30, 2018.  *Id.*  Plaintiffs argue that this alteration ended the TPP awards "prior to the planned end of a period of performance," amounting to a termination.  *Id.*  Yet, the NOAs

specify the time as "project period," not "period of performance."  *See* ECF No. 24-3 at 10.

Defendants argue that because Plaintiffs could not incur new obligations under the TPP Program awards beyond the year for which the funds were appropriated, it is clear that the period of performance for those awards was the budget period.  ECF No. 27 at 27.  Defendants also insist that the "loan cross-reference" in the regulations for "project period" and "period of performance" cannot overcome the substantive definition of "period of performance" in the regulations.  ECF Nos. 27 at 27; 30 at 14.  Defendants state that the cross-reference merely corresponds to the "definitions for terms used in this part."  ECF No. 30 at 14.  Defendants emphasize that financial obligations cannot be imposed on the government that go beyond a single fiscal year because it would violate the ADA, as discussed above.  ECF No. 27 at 27.

Plaintiffs respond that the HHS guidance documents explain how "project period" differs from the "budget period."  ECF No. 29 at 15.  In the Frequently Asked Questions regarding this issue, HHS stated that "[t]he project period is the total time for which support of a project has been programmatically approved by OAH.  For budgetary and reporting purposes, funding is provided in annual increments called budget periods."  ECF No. 29 at 15; Frequently Asked Questions for OAH 2015 TPP FOAs, https://www.hhs.gov/ash/oah/sites/default/files/2015-

general-tpp-faqs.pdf, at 8 (last visited Apr. 17, 2018).  HHS further explained that "[g]rants will be funded in annual increments (budget periods) and are generally approved for a project period of up to five years, although shorter project periods may be approved."  ECF No. 29 at 15-16; Frequently Asked Questions.  Plaintiffs thus conclude that HHS's own regulations and guidance indicate that the "period of performance" is the five-year project period, not the single year budget periods.  ECF No. 29 at 16.

The Court considers Plaintiffs' citation to the D.C. Circuit's decision in *Southern Mutual Help Association, Inc. v. Califano*, 574 F.2d 518 (D.C. Cir. 1997).  *See* ECF No. 29 at 17.  The court in *Califano* determined that the Department of Health, Education and Welfare's ("HEW") disapproval, after three years of federal support, of annual application for continued funding for migrant health care facility constituted a termination.  *Califano*, 574 F.2d at 527.  The court stated that the grant appeals process was established to afford grantees maximum due process and thus the definition of "termination" should be interpreted in "the light most favorable to the grantee."  *Id.*  The court also noted that "'grant termination' is a term of interest to virtually all agencies" and is thus not subject to HEW's special expertise.  *Id.*

Defendants argue that *Califano* is not controlling nor applicable.  ECF No. 30 at 17.  Defendants emphasize that "the light most favorable to the grantee" is a

level of deference that Plaintiffs did not ask for here, as no principle of law would so require. *Id.* Defendants assert that the case here does not involve Plaintiffs' authority to charge allowable costs to the existing grant, which was the operative standard for termination in *Califano*. *Id.* Defendants cite a contrary decision, which held that a grantee has no legal entitlement to funds for future years within a project period. *Id.*; *Missouri Health & Med. Org., Inc. v. United States*, 641 F.2d 870, 873-74 (Ct. Cl. 1981). A Department Appeals Board explained that after the *Califano* decision, HHS "clarified its regulations to specifically distinguish a termination of previously awarded funds from a denial of further funding." *Nw. Rural Opportunities, Inc.*, DAB 324 (1982) (H.H.S. June 30, 1982). The Board determined that this clarification precluded it from reviewing the dispute as a termination where a grant was approved for on a multi-year basis or "project period," but was then denied for successive "budget periods."[2] *Id.* at *1. Additionally, Defendants emphasize that "in both its regulations and its informal guidance, HHS has maintained the distinction between not issuing a continuation award and termination for decades." ECF No. 30 at 19 n.6.

---

[2]     Defendants note that the operative regulations in *Northwest Rural Opportunities* was revised in 1994, but the revisions did not suggest HHS was adopting *Califano*'s interpretation. ECF No. 30 at 19 n.6.

1    While the Court is not persuaded by the findings in *Califano*, the Court

2 determines that the definition found in 45 C.F.R. § 75.2 expressly clarifies that

3 "project period" and "period of performance" are synonymous.  The Court is not

4 convinced that this regulation is a "loan cross-reference," but the plain language of

5 this regulation explains that these terms hold the same meaning.  The statement

6 found in the GPS that the projected levels of future support are not guarantees that

7 the project will be funded ensures compliance with the ADA, and does not show

8 that the period of performance is merely a budget period.  *See* ECF No. 27-2 at

9 156.  The start and end date of the period of performance, which must be included

10 in the Federal award, is specified as the five year project period.  *See* 45 C.F.R. §

11 75.2.  The parties had a clear intent to create a five-year project[3] and ending this

12

13 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [3]    The FOA outlines the grantee's expectations "[o]ver the five-year project

14 period."  ECF No. 27-2 at 11.  The GPS did not guarantee funds beyond the current

15 budget period, as it would be a violation of the ADA.  Yet, the GPS does state that

16 the "NoAs document approval of a project period that extends beyond the budget

17 period for which funds are provided, indicat[es] the OPDIV's intention to provide

18 continued financial support."  *Id.* at 156.  The HHS website described its first

19 round of grants in 2010 as having a "five-year funding period."  ECF No. 24-2 at

20 373.  The website remarked that the newest round of grants, at issue here,

ORDER GRANTING PERMANENT INJUNCTION ~ 19

understanding constitutes a termination.  The parties did not contemplate five, one-year projects, but rather a comprehensive five-year, ever evolving and improving project period.  The Court finds that the period of performance is for the entire five-year, non-compete cooperative agreement, not for a single budget period.

### d.  Capable of Review

Defendants assert that HHS's decision to issue future continuing awards is unreviewable as it is "committed to agency discretion" and there is no meaningful

―――――――――――

"anticipates reaching 1.2 million youth in 39 states and the Marshal Islands from FY2015-2019." *Id.* at 374.  While this document is not binding, the Court finds it instructive to show HHS's communicated intent regarding the length of the program.

Additionally, the Court emphasizes that the NOAs clarify the action type as a "Non-Competing Continuation."  ECF Nos. 24-3 at 23, 54; 24-5 at 27, 42; 24-6 at 485, 499, 513, 527, 565, 579, 593, 608.  "Each year of the approved project period, grantees are required to submit a noncompeting application … for the upcoming year."  ECF No. 24-6 at 91, 206, 301, 407.  Plaintiffs were then guaranteed the ability to apply for funding for each budget period without having to compete for the funds.

1   standard against which to judge the agency's discretion.  ECF No. 27 at 28;

2   *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993).

3       The APA embodies "a basic presumption of judicial review." *Lincoln*, 508

4   U.S. at 190.  Yet, § 701(a)(2) precludes judicial review of certain administrative

5   decisions that courts traditionally have regarded as "committed to agency

6   discretion." *Id.* at 191.  In *Lincoln*, the Supreme Court found that allocations of

7   funds from a lump-sum appropriation is an administrative decision that is

8   traditionally regarded as committed to agency discretion. *Id.* at 192.  The Supreme

9   Court held that the Indian Health Service's decision to discontinue an Indian

10   Children's Program was unreviewable under § 701(a)(2). *Id.*  The Supreme Court

11   determined that the Indian Health Service's  "reallocation of agency resources to

12   assist handicapped Indian children nationwide clearly falls within the Service's

13   statutory mandate to provide health care to Indian people …. The decision to

14   terminate the Program was committed to the Service's discretion." *Id.*

15       The Supreme Court has emphasized that § 701(a)(2) stakes out "a very

16   narrow exception." *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000).  There

17   are two circumstances in which judicial review is foreclosed under § 701(a)(2). *Id.*

18   at 943.  First, the "rare circumstance[] where the relevant statute is drawn so a

19   court would have no meaningful standard against which to judge the agency's

20   exercise of discretion," and thus there "is no law to apply." *Lincoln*, 508 U.S. at

191.  Second, where the agency action requires "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," such as "the prioritization of agency resources, likelihood of success in fulfilling the agency's statutory mandate, and compatibility with 'the agency's overall policies.'"  *Newman*, 223 F.3d at 943 (citation omitted).

Here, Defendants argue that there is an absence of a meaningful standard for the court to judge HHS's discretionary decision whether to approve the continuation award or recompete the FY 2018 funds.  ECF No. 27 at 29.  Defendants insist that neither the TPP Program nor regulations provide any guidance about that decision.  *Id.*  Defendants also note that a choice by agencies as to how to spend appropriated TPP Program funds falls within their area of expertise.  *Id.*

Plaintiffs assert that review is available where the plaintiff claims that the agency has violated a regulatory requirement.  ECF No. 29 at 23.  Plaintiffs note that they are not arguing that HHS lacks authority to terminate awards, but that the termination must satisfy one of the three circumstances under which Federal awards may be terminated according to HHS regulations.  ECF No. 29 at 23-24; 45 C.F.R. § 75.372(a).

The Court notes that the Defendants' cited case, *Alan Guttmacher Inst. v. McPherson*, 597 F. Supp. 1530 (S.D.N.Y. 1984), is not controlling and

1  distinguishable.  This case concerned the decision of the Agency for International

2  Development to not renew a grant which provided funding for a publication

3  regarding family planning.  *Alan Guttmacher Inst.*, 597 F. Supp. at 1530.  The

4  court found that review of renewing funding grants were "notoriously unsuitable

5  for judicial review, for they involve the inherently subjective weighing of the large

6  number of varied priorities which combine to dictate the wisest dissemination of an

7  agency's limited budget."  *Id.*  Yet, the Court agrees with Plaintiffs that this case is

8  inapplicable because there were no regulations in place that provided a clear limit

9  to the agency's discretion to terminate its grants.  *See* ECF No. 29 at 23 n.22.

10  　　　The Court finds that Defendants other case citations are also distinguishable.

11  *See* ECF No. 27 at 30 n.6.  In *Community Action of Laramie County, Inc. v.*

12  *Bowen*, the Tenth Circuit emphasized the difficulty of reviewing discretionary

13  decisions "[w]ithout manageable substantive standards against which to judge

14  HHS's exercise of discretion, our review would amount to nothing more than an

15  impermissible ad hoc assessment of the fairness of agency action."  866 F.2d 347,

16  352-54 (10th Cir. 1989).  In *Apter v. Richardson*, the Seventh Circuit found that

17  the medical merits of the National Institutes of Health decisions on training grants

18  may be committed to the unreviewable discretion of the agency, but also held that

19  "[w]here it is alleged that the agency has transgressed a constitutional guarantee or

20  violated an express statutory or procedural directive, otherwise non-reviewable

1    agency action should be examined to the extent necessary to determine the merits

2    of the allegation."  510 F.2d 351, 355 (7th Cir. 1975).  These cases had no

3    manageable substantive standards by which to judge the agencies' actions, unlike

4    the situation here, as discussed below.

5            In *Kletschka v. Driver*, the Second Circuit declined to review decisions by

6    the Veterans Affairs for awarding or refusing to award research grants that were

7    highly technical in nature.  411 F.2d 436, 443 (2nd Cir. 1969).  In *Grassetti v.*

8    *Weingberger*, the Northern District of California declined to review denial of

9    research grant money for a cancer research program.  408 F. Supp. 142 (N.D. Cal.

10   1976).  The court held that "it is probable that the medical merits of agency

11   decisions on research grant applications are committed to the unreviewable

12   discretion of the agency, subject to judicial scrutiny only where it is alleged that

13   the agency has transgressed a constitutional guarantee or violated an express

14   statutory or procedural directive."  *Id.* at 150.  *Grassetti* is similar to *Kletschka*

15   because both involve the technical merits of various research grants.  Both these

16   cases are then distinguishable because the instant case involves terminating a grant,

17   not deciding the merits of various grant options.  The Court also finds that

18   *Philadelphia Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev.* is inapplicable

19   because it concerns an agency's power to refuse to renew a contract, whereas here

20

1    the issue involves termination of a non-compete, cooperative agreement.  553 F.

2    Supp. 2d 433, 439 (E.D. Pa. 2008).

3        The Court finds that these cases are not controlling nor do they prove

4    Defendants' argument, as many emphasize that an agency's decision is reviewable

5    when there is a clear regulatory or statutory standard.  Here, there is a meaningful

6    standard against which to judge the agency's decision, and this is then not a rare

7    circumstance where there is no law to apply.  *Lincoln*, 508 U.S. at 191.

8    Additionally, the agency action is not so complex that it requires a balancing of a

9    number of factors that are peculiar to the agency's expertise, unlike the technical

10   and medical cases discussed above.  The case here involves the simple question

11   whether HHS unlawfully terminated the TPP Program contrary to the applicable

12   termination regulations.

13       Under 45 C.F.R. § 75.372(a), a Federal award may be terminated by the

14   HHS awarding agency:  (1) if the awardee "fails to comply with the terms and

15   conditions of the award"; (2) "for cause"; or (3) "with the consent of the non-

16   Federal entity."  45 C.F.R. § 75.372(a)(1)-(3).  The Funding Announcement

17   explains that funding for all approved budget periods beyond the first year "is

18   contingent upon the availability of funds, satisfactory progress of the project, and

19   adequate stewardship of Federal funds."  ECF No. 27-2 at 39.  The GPS states that

20   an OPDIV may decide not to make a non-competing continuation award within the

ORDER GRANTING PERMANENT INJUNCTION ~ 25

1    current competitive segment if:  (1) "[a]dequate Federal funds are not available to

2    support the project"; (2) "[a] recipient failed to show satisfactory progress in

3    achieving the objectives of the project"; (3) "[a] recipient failed to meet the terms

4    and conditions of a previous award"; or (4) "[f]or whatever reason, continued

5    funding would not be in the best interests of the Federal government." *Id.* at 249.

6    Defendants emphasize the importance of this final factor.  *See* ECF No. 27 at 25.

7        The NOAs make clear the ranking of the policies applicable to the grants, as

8    discussed above.  ECF No. 24-5 at 14.  The NOAs control over any conflicting

9    language in the GPS.  Grant program regulations control over award notices,

10   including the terms and conditions that Defendants argue are applicable,

11   specifically the fourth factor.  The regulations relating to HHS's ability to

12   terminate a program found in 45 C.F.R. § 75.372(a) are then controlling as a

13   federal regulation over the language found in the GPS.  These regulations create a

14   meaningful standard of review.  Accordingly, the Court considers the merits of

15   Plaintiffs' APA claims below.

16       **e.  Arbitrary and Capricious, and Contrary to Law**

17        Pursuant to the Administrative Procedure Act ("APA"), an agency action

18   must be set aside and held unlawful if it is "arbitrary, capricious, an abuse of

19   discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The

20   burden is on Plaintiffs to show any decision or action was arbitrary and capricious.

1    *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976).  Agency action will be upheld if

2    the agency "has considered the relevant factors and articulated a rational

3    connection between the facts found and the choice made."  *Baltimore Gas & Elec.*

4    *Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983).  An agency's

5    decision can be upheld only on the basis of the reasoning in that decision.  *High*

6    *Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 638 (9th Cir. 2004).

7         "The scope of review under the 'arbitrary and capricious' standard is

8    narrow and a court is not to substitute its judgment for that of the agency," but "the

9    agency must examine the relevant data and articulate a satisfactory explanation for

10   its action including a 'rational connection between the facts found and the choice

11   made.'"  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

12   463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S.

13   156, 168 (1962)).  An agency decision may be reversed under the arbitrary and

14   capricious standard:

> [I]f the agency has relied on factors that Congress has not intended it
> to consider, entirely failed to consider an important aspect of the
> problem, offered an explanation for its decision that runs counter to
> the evidence before the agency, or is so implausible that it could not
> be ascribed to a difference in view or the product of agency expertise.

18   *Id.*

19        Here, Plaintiffs argue that HHS's termination of their cooperative

20   agreements is both contrary to law and arbitrary and capricious.  ECF No. 24 at 17.

ORDER GRANTING PERMANENT INJUNCTION ~ 27

1   Plaintiffs insist that HHS's termination is inconsistent with its own regulations, the

2   termination cannot be saved by HHS's decision to terminate the TPP Program as a

3   whole as it defies clear statutory direction, and the termination is arbitrary and

4   capricious.  *Id.*  Defendants assert that HHS did not act arbitrarily and capriciously

5   by exercising its rights under the terms and conditions of the Plaintiffs' grants.

6   ECF No. 27 at 32.  As discussed above, Defendants' conduct was a termination

7   and is subject to the standards found in 45 C.F.R. § 75.372, and thus the Court will

8   not address Defendants' arguments relating to the GPS's statement that the agency

9   can discontinue funding if it is in the best interests of the government.  *See id.*

10      First, Plaintiffs argue that HHS's actions are inconsistent with its own

11  regulations, meaning that the agency acted arbitrarily and capriciously.  ECF No.

12  24 at 17; *see also Salehpour v. I.N.S.*, 761 F.2d 1442, 1447 (9th Cir. 1985).

13  Plaintiffs assert that HHS lacked authority to terminate Plaintiffs' awards because

14  it cannot demonstrate that any Plaintiff "failed to comply with the terms and

15  conditions of the award" or that there was "cause."  ECF No. 24 at 18-19 (quoting

16  45 C.F.R. § 75.374).  Plaintiffs also note that they have clearly not consented to the

17  termination and thus, the third clause of the regulation is not at issue.  *See id.* at 19.

18      Second, Plaintiffs insist that Congress directed HHS to implement the TPP

19  Program and that statutory direction was in full effect when HHS shortened

20

Plaintiffs' period of performance. *Id.* Plaintiffs argue that until Congress removes its direction, the HHS must continue to implement the TPP Program. *Id.* at 19-20.

Third, Plaintiffs contend that the agency action was arbitrary and capricious because the agency fails to satisfy the requirements found in *Motor Vehicle*, referenced above. ECF No. 24 at 20; *Motor Vehicle*, 463 U.S. at 43. Plaintiffs argue that HHS's various stated rationales for terminating the TPP Program are inconsistent with each other, and inconsistent with language on HHS's own website praising the TPP Program. ECF No. 24 at 21. Plaintiffs assert that HHS's various stated rationales fail to take account of all the evidence before it and ignore the facts in favor of the Administration's political agenda. *Id.* at 23. Plaintiffs also allege that HHS's claim that the TPP Program as a whole was ineffective, is contradicted by the demonstrated evidence of the Program's success and HHS's own positive statements about the Program. *Id.* at 24.

The Court finds that HHS arbitrarily and capriciously terminated the TPP Program. Plaintiffs have come forth with evidence of the success of the TPP Program and Defendants have failed to rebut Plaintiffs' arguments. ECF Nos. 24 at 13-19; 27 at 31-32; 29 at 10-11. At oral argument Defendants conceded that they are not providing the Court with rebuttal evidence, but merely assert that the decision was in the best interests of the government in accordance with the GPS. Defendants simply state that "*HHS's policy concerns with the current TPP*

1   *Program are a matter of public record.*"  ECF No. 27 at 32 (emphasis added).

2   Defendants thus concede that their concerns with the TPP Program are based on

3   "policy concerns," not the alleged ineffectiveness of the Program.  Defendants also

4   state that HHS can withhold awards "for whatever reason, continued funding

5   would not be in the best interest of the federal government." *Id.* at 29; 27-2 at 249.

6   As already discussed above, the GPS supplied "best interest" justification is not

7   controlling when it conflicts with regulations, such as 45 C.F.R. § 75.374.

8         The Court determines that Defendants' reasoning, "policy concerns" and

9   "whatever reason" are arbitrary and capricious justifications.  Defendants have

10  failed to "examine the relevant data and articulate a satisfactory explanation for its

11  action[.]"  *Motor Vehicle*, 463 U.S. at 43.  Defendants do not offer a rational

12  connection between the facts and the choice made, but merely articulate policy

13  concerns and their own discretion to terminate the program for whatever reason.

14  This reasoning or lack thereof is arbitrary and capricious.  Accordingly, the Court

15  finds that Plaintiffs establish actual success on the merits of their APA claims.

16        **2. Due Process Claim**

17        Plaintiffs allege that HHS has deprived them of their property interest in the

18  final two years of their TPP Program grants and did so without the procedural

19  protections required under the Due Process Clause of the Fifth Amendment.  ECF

20  No. 24 at 26-27.  The Fifth Amendment ensures that no one shall be "deprived of

1    life, liberty or property without due process of law." U.S. Const. amend. V.

2    Courts analyze procedural due process claims in two steps.  First, the court asks

3    whether there was deprivation of a constitutionally protected liberty or property

4    interest.  *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).  If the court

5    finds a protected interest, it proceeds to step two to determine if there was a denial

6    of adequate procedural protections.  *Id.*

7         At oral argument, Plaintiffs conceded that if the Court grants the preliminary

8    injunction in regards to the APA claims, then it need not reach the due process

9    claim.  Plaintiffs have shown an APA violation and thus have shown a protected

10   property interest and denial of the adequate procedural safeguard of a pre-

11   termination hearing.  Yet, the Court need not reach this issue.  Accordingly, the

12   Court grants the permanent injunction in regards to the APA claims and does not

13   consider the due process claim.

14   **B. Irreparable Injury and Remedies at Law**

15        A plaintiff seeking permanent injunctive relief must demonstrate that he or

16   she "has suffered irreparable injury."  *Indep. Training*, 730 F.3d at 1032.

17   "Irreparable harm is traditionally defined as harm for which there is no adequate

18   legal remedy, such as an award of damages."  *Arizona Dream Act Coal. v. Brewer*,

19   757 F.3d 1053, 1068 (9th Cir. 2014) (citation omitted).  "[I]ntangible injuries, such

20   as damage to recruitment efforts and goodwill, qualify as irreparable harm."  *Rent-*

*A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

Here, Plaintiffs insist that they will suffer irreparable harm if HHS is not enjoined from terminating their cooperative agreements and the TPP Program. ECF No. 24 at 30.  Plaintiffs cite that courts have found irreparable harm based on an organization's claims that the challenged action will cause them to "lay off employees, reduce services, … cancel established programs, and lose relationships and goodwill with volunteers and community partners …."  *Id.*; *Doe v. Trump*, 288 F. Supp. 3d 1045, *7 (W.D. Wash. 2017), *reconsideration denied*, 284 F. Supp. 3d 1182 (W.D. Wash. 2018).

Plaintiffs assert that they designed their budgets, programming, staffing, and partnerships with community organizations based on the understanding that HHS would fulfill its obligations.  ECF No. 24 at 31.  Plaintiffs state that HHS's termination disrupts Plaintiffs' abilities to continue operations as planned and threatens their relationships and goodwill with local partners in the communities they serve.  *Id.*  Plaintiffs highlight that the early termination requires immediate action to scale down operations, which threatens reductions in staffing and they will then not have the resources necessary to complete their work.  *Id.*  Plaintiffs emphasize that HHS's actions hinder their ability to provide health services in the communities they serve.  *Id.* at 31-32.

1    Defendants contend that Plaintiffs received notice that their TPP Program

2    grants would not be renewed by early July 2017, but they waited almost seven

3    months to file this suit.  ECF No. 27 at 33.  Defendants state that Plaintiffs also

4    tarried over six months after filing a set of challenges with HHS in August 2017.

5    *Id.* at 34.  Defendants also emphasize that Plaintiffs waited another month after

6    filing this suit to lodge their request for injunctive relief.  *Id.*  Defendants then

7    argue that the eight month delay betrays a "lack of urgency and irreparable harm."

8    *Id.*

9    Plaintiffs respond that they moved for an injunction three and half months

10   before the scheduled termination, not on the eve of the termination of their

11   agreements.  ECF No. 29 at 30.  Plaintiffs emphasize that they were not sitting

12   idly, but immediately sent letters to OAH challenging the termination.  *Id.*  The

13   TPP Program also pursued a FOIA action to assess HHS's motives for terminating

14   the program, and Senators issued inquiries to HHS questioning its approach.  *Id.*

15   Plaintiffs note that FY 2018 funding was under Congressional consideration and

16   debate, and Congress' failure to approve the fiscal year funding would have a

17   material impact on Plaintiffs' claims.  *Id.*

18   The Court agrees that delay in seeking an injunction weighs in favor of

19   finding a lack of irreparable harm, but the cases cited by Defendants do not "doom

20   Plaintiffs' motion."  ECF No. 27 at 34.  In *Oakland Tribune, Inc. v. Chronicle Pub.*

*Co.*, the Ninth Circuit considered a plaintiff's delay before seeking a preliminary

injunction without any explanation as implying a lack of urgency and irreparable

harm.  762 F.2d 1374, 1377 (9th Cir. 1985).  Yet, the court found this was only one

factor among many at the discretion of the trial court.  *Id.*  The other cases cited by

Defendants also show that delay is only one factor in the overall consideration.

*See* ECF No. 27 at 34; *see Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015);

*see also Int'l Ass'n of Plumbing  Mech. Officials v. Int'l Conf. of Bldg. Officials*,

79 F.3d 1153 (table), 1996 WL 117447 (9th Cir. 1996).  The Ninth Circuit has held

that "delay is but a single factor to consider in evaluating irreparable injury; courts

are loath to withhold relief solely on that ground."  *Arc of California v. Douglas*,

757 F.3d 975, 990 (9th Cir. 2014).

　　　　The Court finds that Plaintiffs' delay is not dispositive when this is but one

consideration.  The Court is not persuaded here that Plaintiffs unnecessarily

delayed in filing this action and motion.  Plaintiffs show that they promptly

challenged the action and then filed this motion over three months before the

termination becomes effective.  Even if they did unnecessarily delay, Plaintiffs are

still able to establish irreparable harm to the youth they serve, their staff, the

communities, and Plaintiffs' reputation within those communities.  Plaintiffs would

suffer irreparable harm if their five-year cooperative agreements were terminated

early when the parties intended these programs to last five years and Plaintiffs

1   based their programs, budgeting, staffing, and partnerships with communities on

2   this understanding.  Accordingly, the Court finds that Plaintiffs have established

3   irreparable harm absent injunctive relief.  The Court also determines that remedies

4   available at law, such as monetary damages, are inadequate to compensate for the

5   injury to the youth and communities that Plaintiffs serve.

6   **C. Balance of Hardships**

7       "In each case, courts must balance the competing claims of injury and must

8   consider the effect on each party of the granting or withholding of the requested

9   relief."  *Winters v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal

10  quotation marks and citation omitted).  The Court must balance the hardships to

11  the parties should the *status quo* be preserved against the hardships to the parties

12  should Plaintiffs' requested relief be granted.

13      Here, Plaintiffs assert that HHS would suffer no harm from an injunction

14  during the pendency of the litigation.  ECF No. 24 at 33.  Plaintiffs state that an

15  injunction will impose no costs on HHS, but merely maintains the status quo.  *Id.*

16  at 35.  Defendants respond that HHS must announce a new funding opportunity to

17  solicit competitive grant applications before the fiscal year ends as required by law.

18  ECF No. 27 at 35.  Defendants state that at the same time, Plaintiffs are demanding

19  issuance of new continuing awards by late June.  *Id.*  Defendants argue that

20  processing these awards will double the workload of staff responsible for

administering the TPP Program because OAH will, in effect, be administering two

versions of the TPP Program.  *Id.*  Defendants emphasize that HHS is already

defending TPP Program claims in three other jurisdictions and this has created

significant uncertainty regarding how TPP Program funds will be awarded in the

future.  *Id.*

Plaintiffs respond that HHS's alleged suffering is belied by the fact that

HHS knew from the outset that the validity of the terminations were in dispute, and

that HHS chose to ignore that dispute.  ECF No. 29 at 31.  Plaintiffs argue that any

administrative burden that HHS now faces due to its prior decision to violate its

own regulations are properly attributed to HHS itself, not Plaintiffs.  *Id.*

The Court finds that while Defendants may be burdened by the added

administrative work, this does not overcome Plaintiffs' potential injury discussed

above.  The Court favors that the *status quo* should be preserved, meaning that

Plaintiffs may submit a non-compete application for funding as the parties

originally intended.  Changing the *status quo* to allow Defendants to re-open

competition for grant applications would put a burden on both parties.  Defendants

expressed the burden they would suffer from having to announce a new funding

opportunity to solicit grant applications and the double workload of staff to

administer two versions of the TPP Program.  These burdens can be avoided by

maintaining the *status quo* and allowing the TPP Program to submit a non-compete

1   application for funding.  In balancing the hardships of both parties, the Court

2   determines that Plaintiffs' hardships far outweigh Defendants' avoidable burdens.

3   **D. Public Interest**

4       The Court must lastly decide whether "the public interest would not be

5   disserved by a permanent injunction."  *Indep. Training*, 730 F.3d at 1032.  "In

6   exercising their sound discretion, courts of equity should pay particular regard for

7   the public consequences in employing the extraordinary remedy of injunction."

8   *Winters*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305,

9   312 (1982)).  "The public interest inquiry primarily addresses impact on non-

10  parties rather than parties."  *League of Wilderness Defs./Blue Mountains*

11  *Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (citation

12  omitted).  Regardless, the Court will not grant an injunction unless the public

13  interests in favor of granting an injunction "outweigh other public interests that cut

14  in favor of *not* issuing the injunction."  *Cottrell*, 632 F.3d at 1138 (emphasis in

15  original).

16      Here, Plaintiffs argue that the public interest favors the granting of a

17  preliminary injunction in order to allow their important work performed through

18  the TPP Program to continue.  ECF No. 24 at 33.  Plaintiffs insist that the public is

19  harmed because the termination prevents potential beneficiaries from benefitting

20  from valuable programs.  *Id.*  Plaintiffs state that cutting the TPP Program

1   midstream means that the public as a whole will be deprived of the benefits of the

2   data generated through the program that sheds light on which teen pregnancy

3   prevention methods are most effective.  *Id.* at 34.  Plaintiffs emphasize the non-

4   profit organizations that have confirmed Plaintiffs' positive impact, and that the

5   termination has been criticized by the medical community, members of Congress,

6   and community advocates.  *See id.*  Plaintiffs conclude that particular attention

7   should be given to preserving the *status quo*, which is that Plaintiffs' awards

8   extend through 2020.  *Id.* at 35.

9        Defendants contend that Plaintiffs' request will deprive the public of the

10  opportunity to participate in a competitive grant-making process.  ECF No. 27 at

11  36.  Defendants argue that injunctive relief would cast significant uncertainty upon

12  HHS and other agencies that use "project periods" to structure grants for projects

13  funded through annual appropriations.  *Id.*  Defendants explain that Plaintiffs'

14  theory would confer a vested property interest upon all grantees with multi-year

15  projects, subject only to each grantee's compliance with the terms of their grants

16  and successive appropriations.  *Id.*  This theory would harm the public by

17  mandating ongoing funding of projects even when they no longer advance the

18  government's best interest.  *Id.*  Defendants state that it would also "handcuff"

19  policymakers for adjusting program priorities and making lawful changes to

20  federal programs, allowing prior administrations to "lock in" a particular class of

grantees to grant funding for untold years and impairing political accountability. *Id.*

Plaintiffs respond that the benefits of open competition for participation in federal programs, however desirable, cannot outweigh HHS's obligation to comply with its own regulations when administering those federal programs. ECF No. 29 at 31.

The Court determines that the public interest weighs in favor of Plaintiffs, as it would prevent harm to the community, as discussed above, and prevent loss of data regarding the effectiveness of teen pregnancy prevention. The Court is not persuaded by Defendants concern of mandating further funding of projects when they no longer advance the government's interest. *See* ECF No. 27 at 36. The Court does not find that if a program no longer advances the government's interest, it may not be terminated. The Court does not seek to "handcuff policymakers," but merely finds that Plaintiffs have established that an agency must follow its own regulations in terminating a program. *See id.* Accordingly, the Court finds the public would not be disserved and grants a final injunction.

**E. Injunction Bond**

Plaintiffs request the Court waive any injunction bond under Federal Rule of Civil Procedure 65(c). ECF No. 24 at 36. Plaintiffs argue that the case directly affects the public interest, they would be denied effective review if required to post

1    bond, the federal government will not incur damages from the injunction, and

2    Plaintiffs' likelihood of success on the merits tips in favor of requiring no bond.

3    *Id.*  Defendants did not address the issue of an injunctive bond.  *See* ECF No. 27.

4         Rule 65(c) permits a court to grant preliminary injunctive relief "only if the

5    movant gives security in an amount that the court considers proper to pay the costs

6    and damages sustained by any party found to have been wrongfully enjoined or

7    restrained."  Fed. R. Civ. P. 65(c).  This Rule "invests the district court with

8    discretion as to the amount of security required, *if any*."  *Johnson v. Couturier*, 572

9    F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906,

10   919 (9th Cir. 2003)) (internal quotation marks omitted and emphasis in original).

11   The court "may dispense with the filing of a bond when it concludes there is no

12   realistic likelihood of harm to the defendant from enjoining his or her conduct."

13   *Id.*

14        Here, the Court finds that Defendants would not suffer potential damage

15   arising from the operation of the injunction itself.  As discussed above, a

16   preliminary injunction merely maintains the *status quo* and Defendants will not

17   harm the government's budget if ordered to allow Plaintiffs to submit a non-

18   competitive request for funding, as was originally intended by the five-year

19   cooperative agreements.  Any resulting minimal damage of staff workload is not

20   persuasive where this workload was caused by Defendants' decision to terminate

1    the TPP Program.  Accordingly, the Court waives the injunction bond.

2    **II.    Motion to Dismiss or Motion for Summary Judgment**

3        Defendants move to dismiss the Complaint under Rule 12(b)(1) or 12(b)(6),

4    or for summary judgment pursuant to Rule 56.  ECF No. 27 at 37.  Plaintiffs

5    contend that the Motion for Summary Judgment is inappropriate as the case has not

6    yet reached this stage and Plaintiffs have not yet engaged in discovery.  ECF No.

7    19 at 32.

8        Under Federal Rule of Civil Procedure 56(d), if a nonmovant shows that it

9    cannot present facts essential to justify its opposition, the court may defer

10   considering the motion or deny it.  Fed. R. Civ. P. 56(d).  Here, the Court finds that

11   summary judgment is not appropriate. Plaintiffs have prevailed on their request for

12   a permanent injunction on their APA claim and have represented to the Court that

13   it need not reach their due process claim.  The Court dismisses Plaintiff's

14   establishment clause claim and thus, summary judgment is denied as a moot issue.

15       **A. Motion to Dismiss Standard of Review**

16       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)

17   addresses the court's subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A Rule

18   12(b)(1) motion may be either facial, where the court's inquiry is limited to the

19   allegations in the complaint; or factual, where the court may look beyond the

20   complaint to consider extrinsic evidence.  *Safe Air for Everyone v. Meyer*, 373 F.3d

1035, 1039 (9th Cir. 2004).  The burden of proof in a Rule 12(b)(1) motion is on

the party asserting jurisdiction.  *See Sopcak v. N. Mountain Helicopter Serv.*, 52

F.3d 817, 818 (9th Cir. 1995).  In ruling on a motion to dismiss, a court must

accept all factual allegations in the complaint and construe the pleadings in the

light most favorable to the party opposing the motion.  *Sprewell v. Golden State*

*Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The court may disregard allegations

that are contradicted by matters properly subject to judicial notice or by exhibit.

*Id.*  The court may also disregard conclusory allegations and arguments which are

not supported by reasonable deductions and inferences.  *Id.*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may

move to dismiss the complaint for "failure to state a claim upon which relief can be

granted."  Fed. R. of Civ. P. 12(b)(6).  To survive dismissal, a plaintiff must allege

"sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This requires the plaintiff to

provide "more than labels and conclusions, and a formulaic recitation of the

elements."  *Twombly*, 550 U.S. at 555.  When deciding, the court may consider the

plaintiff's allegations and any "materials incorporated into the complaint by

reference[.]"  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049,

1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

308, 322 (2007)).  A plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" but "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted).

### B. Counts I, II, and IV

Defendants contend that Plaintiffs have no cognizable claims under the APA or the Due Process Clause.  ECF No. 27 at 37.  As discussed above, the Court has determined that Plaintiffs succeed on the merits of their APA claims.  Since there is an APA violation, there is also a due process violation.  The APA violation establishes that there was an invalid termination of the protected property interest of a five-year, non-compete program and Defendants did not provide a pre-termination hearing.  Accordingly, Plaintiffs have established violations of the APA and Due Process Clause.  The Court denies Defendants' Motion to Dismiss regarding these claims.

### C. Count III:  Establishment Clause Claim

Defendants move to dismiss Plaintiffs' establishment clause claim.  ECF No. 27 at 28.  Plaintiffs allege HHS violated Plaintiffs' rights under the Establishment Clause because HHS's conduct has the primary purpose of promoting, advancing, and endorsing religion.  ECF No. 1 at ¶¶ 116-18.  Plaintiffs assert that HHS's

1 conduct excessively entangles the government with religion and impermissibly

2 coerces grantees into adopting Christian viewpoints by withdrawing access to

3 funding for pregnancy prevention programs unless grantees espouse a Christian

4 viewpoint in administering these programs.  *Id.* at ¶ 121.

5       Defendants first contend that Plaintiffs lack standing to assert this claim.

6 ECF No. 27 at 38.  Defendants argue that Plaintiffs' claim is not an attack on

7 decisions made regarding their projects' continued funding, but a challenge to what

8 HHS may later decide to do with the TPP Program.  *Id.*  Defendants assert that the

9 claim is not ripe for review because Plaintiffs do not have Article III standing.  *Id.*

10       To satisfy Article III's standing requirements, the plaintiff must show the

11 follow three elements:  (1) the "plaintiff must have suffered an injury in fact—an

12 invasion of a legally protected interest which is (a) concrete and particularized and

13 (b) actual or imminent, not conjectural or hypothetical;" (2) there must be a "causal

14 connection between the injury and the conduct complained of—the injury has to be

15 'fairly traceable' to the challenged action of the defendant, and not the result of the

16 independent action of some third party not before the court;" and (3) "it must be

17 likely, as opposed to speculative, that the injury will be redressed by a favorable

18 decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal

19 quotation marks, brackets, and citations omitted).

20

1      Here, Defendants insist that when Plaintiffs filed suit, the only decision HHS

2  had made with respect to the TPP Program is that it would not make continuation

3  awards to current grantees.  ECF No. 27 at 38.  Defendants note that HHS has the

4  right to recompete TPP Program funds and Plaintiffs have the right to participate in

5  any such recompete.  *Id.* at 39.  Defendants emphasize that HHS has not yet

6  released a funding announcement for a new round of competitive grant

7  applications, much less reviewed applications or approved any new grants.  *Id.*

8  Defendants argue that Plaintiffs' speculation about possible future decisions is no

9  basis for standing under Article III.  *Id.*

10      Plaintiffs respond that they satisfy Article III standing.  ECF No. 29 at 33.

11  First, Plaintiffs claim they plausibly alleged that HHS's termination decision will

12  cause them irreparable harm.  *Id.*  Second, Plaintiffs insist that that the injury is

13  traceable to the Defendants because Defendants concede that HHS has chosen "not

14  [to] make continuation awards to current grantees," and that Plaintiffs have an

15  Establishment Clause claim "based solely on HHS's actual decision not to continue

16  awarding them funds."  *Id.*; 27 at 39.  Third, Plaintiffs state that remedying the

17  violation would likely remedy Plaintiffs' harms.  ECF No. 29 at 33.

18      The Court finds that Plaintiffs do not sufficiently allege a plausible claim for

19  Article III standing.  The Court determines that this issue is not ripe for review

20  when there is no evidence of a religious purpose in the text, legislative history, or

implementation of the legislation.  HHS has yet to recompete the funds and it is unclear if a future grantee would receive the funding because of its religious viewpoints.  There is no evidence of religious entanglement in HHS's decision to recompete the TPP Program funds when the funds have yet to be recompeted.  The Court cannot determine an Establishment Clause violation without speculating on what Defendants may do with the TPP Program in the future.[4]  Accordingly, the Court dismisses Plaintiff's Establishment Clause claim without prejudice.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Preliminary Injunction (ECF No. 24) converted to a Permanent Injunction is **GRANTED**.  Defendants are immediately:

   a. Enjoined to continue Plaintiffs' cooperative agreements under the TPP Program; and

---

[4]  The Court notes that it also may not consider the individual actions or beliefs of Valerie Huber because the Supreme Court has found that "what is relevant is the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators who enacted the law."  *Board of Education of Westside Community Schools v. Mergens By and Through Mergens*, 496 U.S. 226, 249 (1990) (emphasis in original).

   b.  Enjoined to accept and process, no later than June 30, 2018,

        Plaintiffs' non-competing continuing applications for the fourth

        budget period of Plaintiffs' cooperative agreements.

2.  The Court determines that no surety bond pursuant to Federal Rule of

    Civil Procedure 65(c) is required of Plaintiffs.

3.  This Permanent Injunction is effective immediately upon filing, which

    effectuates service upon the parties through the Court's Electronic Filing

    System.

4.  Defendants' Motion to Dismiss (ECF No. 27) is **GRANTED in part**

    and **DENIED in part**.  Plaintiffs' Establishment Clause Claim only is

    **DISMISSED without prejudice** and with leave to amend.

5.  Defendants' Motion for Summary Judgment (ECF No. 27) is **DENIED**

    **as moot**.

The District Court Executive is directed to file this Order and thereby

effectuate service upon counsel.

   **DATED** April 24, 2018.



                THOMAS O. RICE
        Chief United States District Judge

ORDER GRANTING PERMANENT INJUNCTION ~ 47